WATER WORKS SUPPLY CORP. & others *vs.* GEORGE F.
CAHILL, trustee in bankruptcy, & others.

Suffolk.    April 5, 1962. — May 31, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Public Works. Bond,* Public work. *Equity Pleading and Practice,* Intervention, Proceeding to enforce statutory security.

The bond obtained from the general contractor on a public works project pursuant to G. L. c. 149, § 29, as appearing in St. 1957, c. 682, § 1, is the only statutory security for the benefit of statutory claimants. [446]

A petition by a subcontractor on a city highway construction project against the city, the contractor, and the surety on a bond obtained from the contractor pursuant to G. L. c. 149, § 29, as appearing in St. 1957, c. 682, § 1, seeking in its essence, despite certain averments in it, to enforce the bond as the statutory security, was properly dismissed as against the city; the court was not required to retain the city in the proceeding for the purpose of adjudicating rights in a sum withheld by the city from the contractor. [446–447]

A claimant against statutory security furnished under G. L. c. 149, § 29, as appearing in St. 1957, c. 682, § 1, who seasonably filed his sworn statement of claim, might, more than one year thereafter, intervene to enforce his claim in a proceeding in equity already brought by another claimant. [447–449]

PETITION filed in the Superior Court on January 7, 1960.
The case was heard by *Brogna,* J.

*Samuel H. Cohen (John M. Reed* with him) for the United States Casualty Company.

*Joseph M. Corwin* for George F. Cahill, trustee in bankruptcy.

*Douglas A. Randall,* City Solicitor, for the city of Quincy.

*Robert J. Muldoon (Leonard K. Millen* with him) for John G. Donovan.

WHITTEMORE, J.    These are the appeals of the respondent United States Casualty Company (the bonding company) from final decrees on a petition to enforce rights under G. L. c. 149, § 29.    At issue are (1) the statutory

rights of the subcontractors under G. L. c. 149, § 29, as appearing in St. 1957, c. 682, § 1, as well as the right of the bonding company in a retained percentage under the prime contract, and (2) the rights of subcontractors who filed their claims within the statutory period but did not intervene within a year after filing their claims.

By the prime contract of December 17, 1957, Quincy Contracting Corporation agreed with the city of Quincy to grade and surface a part of Adams Street. The bonding company in connection therewith gave bond ''in the usual statutory form . . . for labor performed or furnished and materials used or employed, etc.''

The petition of Water Works Supply Corp., a subcontractor, was filed January 7, 1960, against the prime contractor, the city, and the bonding company. The petition alleged in paragraph 5 that the city obtained ''security . . . for all labor performed and materials furnished and equipment used . . . [which] consisted of moneys otherwise payable to the defendant Quincy Contracting [Corporation] . . . and retained by the city thereunder, and . . . [the bond in suit].'' In a later paragraph it averred that ''the . . . security constitutes trust property which the city holds in trust . . . .'' The prayers were those which were surely appropriate prior to the amendment of G. L. c. 149, § 29, by St. 1955, c. 702, § 2. That amendment, which substituted a rewritten section, struck the words ''or otherwise'' from the requirement that the awarding authority ''obtain sufficient security, by bond or otherwise, for payment by the contractor.'' The prayers asked that the debt of the prime contractor be established, that money retained by the city be applied to pay the debt, and that the bonding company be ordered to pay any balance.

The city's substituted answer filed on June 23, 1960, in answer to paragraph 5, admitted that the contract required that a bond be furnished as security and that the bonding company furnished that security. That answer also set out that the city was holding the sum of $41,631.25 ''for the benefit of such persons as may be proved to be entitled thereto.''

On September 14, 1960, the bonding company's answer was amended to assert that "any and all monies retained and/or unpaid by the . . . city . . . to the Quincy Contracting Corporation, [or] its trustee in bankruptcy, constitute prior security for the payment of the provable claim of the petitioner. That a decree . . . be entered directing that any and all such retainages and/or payments . . . be exhausted . . . prior to a direction . . . to the . . . [bonding company] to pay any part or all of the same."

Two other subcontractors intervened within a year of filing claims. On October 5, 1960, the trustee in bankruptcy of the prime contractor was substituted for it as a respondent. The case was heard in the Superior Court in December, 1960.

On December 21, 1960, it was stated by the attorney for the city, without objection (and the statement, we assume, was accepted in lieu of evidence), that there were various claims against the withheld funds. These included (1) three trustee writs in two of which the ad damnum was $5,000 and in one of which the city had not answered and, although it believed it had no funds had, nevertheless, been served in scire facias for a judgment of $30,000; (2) the claim of the United States of America under tax liens for $14,818.43; (3) the claim of the trustee in bankruptcy for all the funds.

In the same statement it was set out that the city claimed the sum of $9,884.72 for taxes, and that the "retained percentage under this contract" was $11,567.26.

On December 22, 1960, on motion of the trustee in bankruptcy, a final decree was entered, the effect of which was to dismiss the petition as against the city. The bonding company duly appealed.

The prime contract incorporated by reference the standard specifications for highways and bridges adopted January 26, 1954, and amendments thereto, sometimes referred to by the date on the booklet cover "1953." Amendments in accordance with a revision of April, 1957, were set out in the "Notice to Contractors" underlying the contract.

There was included among the amendments a new Article 85 reading, "In accordance with the requirements of . . . [St. 1957, c. 682] the contractor shall be required to furnish . . . a satisfactory bond in an amount not less than one-half of the contract price, as security for payment by the contractor and subcontractors for labor, materials, rental of equipment, and for such other purposes as are more specifically set forth in said act."

Article 57 of the standard specifications[1] provides in substance for the retention of moneys necessary to discharge claims for labor, materials, or damages and also provides: "It is understood that the security required by . . . [G. L. c. 30, § 39, or c. 149, § 29] is obtained both by the bond . . . and by the power of the Party of the First Part to retain and pay money under the provisions of this article, but the release of one shall in no way impair or discharge the other. Neither the said Party of the First Part nor any member thereof shall be liable to any individual, firm or corporation making any claim as aforesaid for failure or refusal to retain any money used under this contract for the purpose of payment of such claim."

The 1957 revision of the standard specifications amended Article 57 by substituting for the references to G. L. c. 30, § 39, and c. 149, § 29, references to St. 1957, c. 682.

The 1957 revision also included a new Article 84 which incorporated a new provision for payment of subcontractors from retained sums in accordance with G. L. c. 30, § 39F, inserted by St. 1954, c. 609, as amended through St. 1956, c. 677, § 1. See, for a subcontractor's rights under § 39F, *Pioneer Steel Erectors, Inc.* v. *Commonwealth, ante,* 195.

---

[1] The booklet containing the standard specifications was not marked as an exhibit nor transmitted to this court. However, it was referred to at the trial by counsel ("for some of the basic information, such as retained percentages, it will be necessary . . . for Your Honor to have a copy of the complete booklet") and the judge said, "I have one in my office," and he then accepted in evidence the contract and the amendments to the standard specifications, both of which documents have been transmitted. Article 57 of the standard specifications was referred to in argument and we refer to it in this opinion to show that, even had it been before us, our decision would be the same.

At the hearing John G. Donovan, a subcontractor who had filed his claim seasonably but had not intervened within a year, was allowed to present evidence of his claim and on December 22, 1960, the judge allowed his motion to intervene. The bonding company duly excepted.

The claims of the four subcontractors were adjudicated in findings, rulings, and order for decree of December 30, 1960, and a final decree, which established the sums due and payable by the prime contractor and ordered that the bonding company pay these amounts, was entered August 18, 1961.

Meanwhile, on February 3, 1961, the petitions to intervene of two other subcontractors were allowed by another judge.

On September 13, 1961, the judge who had heard the proceedings in respect of the four adjudicated claims denied the motion of the bonding company to vacate the orders allowing the intervention of the two additional creditors. The bonding company duly excepted. After hearing, the judge, by supplementary findings, rulings, and order for decree, disallowed against the bonding company one of the claims because of late filing but established the claim of the other. On October 20, 1961, the final decree of August 18, 1961, was amended by adding paragraphs to adjudge the amount due and payable by the prime contractor on each claim and ordering the bonding company to pay the amount due to the claimant B. & H. Equipment Corporation.

The bonding company duly appealed from the final decree of August 18, 1961, as originally entered and as amended.

1. The decree which dismissed the petition as against the city was right. The bond is the only statutory security for the benefit of statutory claimants under G. L. c. 149, § 29, as that section now stands after the amendment of St. 1955, c. 702, § 2 (carried forward in St. 1957, c. 682, § 1). See *Pioneer Steel Erectors, Inc.* v. *Commonwealth, ante,* 195, 198. Compare *J. J. Struzziery Co. Inc.* v. *A. V. Taurasi Co. Inc.* 340 Mass 481, 483–484, 486 (contract and bond dated March 30, 1954, under G. L. c. 30, § 39, requiring

security "by bond or otherwise." See St. 1955, c. 702, § 1). The petition was primarily a petition to reach the statutory security whatever it was. The court was justified in construing it as such notwithstanding the references to the retained funds. These were little more than mistaken averments of what the petitioner believed constituted statutory security. The petition was entirely inadequate as a petition against the retained funds under G. L. c. 30, § 39F, and did not purport to be such.

Perhaps G. L. c. 30, § 39F, and the references in the incorporated standard specifications gave the bonding company equitable rights in the retained funds as additional security for payment of claims, although not available under G. L. c. 149, § 29. The petition, however, was not a bill to marshal and apply securities. The bonding company's amended answer was in no sense a cross bill which gave it the right to ask or require that the proceedings be kept alive to adjudicate such rights. The bonding company acquired no additional right against the retained funds by virtue of the petition to reach the statutory security. When the statutory creditors were paid under the statute this petition lost its significance. The court was not required, even if it had the right, to keep the petition alive to adjudicate the respective rights of the city, the trustee in bankruptcy, and nonstatutory creditors (to be added by amendment). *Old Colony Crushed Stone Co.* v. *Cronin,* 276 Mass. 221, 227. *J. J. Struzziery Co. Inc.* v. *A. V. Taurasi Co. Inc.* 340 Mass. 481, 487–488. Compare *Darling-Singer Lumber Co.* v. *Commonwealth,* 290 Mass. 488, 489.

The city, as the nominal obligee of the bond, was at least an appropriate party respondent to the petition to obtain rights under the bond. But in the posture of the case on December 22, 1960, nothing required that the city be continued as a party and the decree dismissing the petition as to it cleared the way for other proceedings to resolve claims to the retained percentage.

2. The allowance of the claims of creditors who had filed within the statutory period but had not intervened within a

year thereafter was right. General Laws c. 149, § 29, now provides that ''In order to obtain the benefit of such security the claimant shall file . . . a sworn statement of his claim prior to the expiration of ninety days after the claimant ceases to perform labor or furnish labor, materials, appliances and equipment as aforesaid, for which claim is made . . . and, if such claim is not paid or satisfied, shall file, within one year after the filing of such claim, a petition in equity in the superior court for the proper county to enforce his claim or intervene in a petition already filed.''

Section 29, precisely read, does not require intervention within the year. That it is intended to be read not to require such intervention is confirmed by following paragraphs of the section which provide that the court may examine all claims ''which have been duly filed'' and determine the rights of the claimants and that: ''Any claimant whose claim has been duly filed shall have the right to appear at hearings on any petition without formally intervening by any pleadings, and may . . . [participate] to the same extent and in the same manner as though he had intervened by formal pleadings.'' There can be no doubt of this intention in the light of the statutory history.

Section 29, prior to its amendment by St. 1957, c. 682, § 1 (see G. L. [Ter. Ed.] c. 149, § 29, St. 1935, c. 472, § 2; St. 1938, c. 361; St. 1955, c. 702, § 2), provided that ''to obtain the benefit of such security the claimant shall file . . . a sworn statement . . . and *shall, within one year* after the filing of such claim, *file* a petition in the superior court . . . *or intervene* in a petition already filed'' (emphasis supplied). Statute 1935, c. 472, § 2, added to the foregoing a proviso (carried forward by St. 1938, c. 361, and by St. 1955, c. 702, § 2) that ''any other person who has duly filed a claim solely for labor performed or furnished . . . may obtain his rights in the following manner.'' There followed in substance a provision like that summarized above from § 29 in its 1957 form for allowance, without formal intervention, of the duly filed claim of ''any claimant.'' Statute 1957, c. 682, § 1, omitted the proviso which specified only labor

claimants and changed the requirement in respect of a petition to read, as stated, "shall file, within one year . . . a petition . . . or intervene in a petition already filed."

There is nothing to the contrary of this in *Marinucci Bros. & Co. Inc.* v. *Semper Constr. Co. Inc.* 343 Mass. 738, 740, where the issue of late intervention, although dealt with by the master, did not arise on the appeal.

> *Decrees affirmed with costs of the appeals to the appellees against the United States Casualty Company.*