PHILIP DRINKWATER *vs.* D. GUSCHOV COMPANY, INC. & others.

Suffolk. December 4, 1963. — March 4, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Public Works. Contract,* Performance and breach, Building contract. *Equity Pleading and Practice,* Waiver, Proceeding to enforce statutory security. *Evidence,* Of value. *Waiver.*

Where it appeared that the sworn statement of claim required by G. L. c. 149, § 29, was not introduced in evidence at the trial of a suit by a subcontractor on a city construction project to enforce the bond obtained from the general contractor as the statutory security, but that the statement was discussed and the judge remarked that it was "not in issue," that counsel then remained silent, and that the statement was never thereafter inquired about or discussed, the surety on the bond waived the defence that the statement had not been filed.   [139–140]

On evidence in a suit in equity that a subcontract on a city construction project provided for payment by the general contractor to the subcontractor of ninety per cent of all labor and materials supplied by the subcontractor about ten days after the general contractor received payment therefor from the city, that after the receipt of payments from the city in two successive months the general contractor paid the subcontractor substantially less than the amounts due him, and that after several unsuccessful demands for increased payments the subcontractor ceased further work, a conclusion was proper that the underpayments were a material breach of the subcontract and default on the part of the general contractor justifying the subcontractor in leaving the job. [140–141]

A subcontractor on a city construction project who justifiably ceased performance of the subcontract by reason of a material breach thereof by the general contractor was entitled, in a suit to enforce the bond furnished by the general contractor as statutory security under G. L. c. 149,

§ 29, to an award in the amount of the subcontract price less the cost of completion of the work covered by the subcontract and less certain payments made to him by the general contractor.   [141]

At the trial of a suit in equity by a subcontractor on a public works project against the general contractor, there was no error in allowing the plaintiff, over the defendant's general objection, to answer questions as to "how much in dollars and cents" he "did" in one month under the subcontract and as to his "figure . . . of what . . . [he] did" in the following month: the questions could be considered as calling for an estimate of the fair value of the work done.   [142]

A final decree in favor of the plaintiff in a suit by an unpaid subcontractor on a city construction project seeking payment of his claim under G. L. c. 149, § 29, as appearing in St. 1957, c. 682, § 1, should be confined to enforcing the bond furnished by the general contractor under § 29 as the only statutory security and should not also provide for the plaintiff's reaching funds retained by the city under its contract with the general contractor.   [142]

BILL IN EQUITY filed in the Superior Court on October 4, 1961.

The case was heard by *Gourdin, J.*

*James W. Kelleher* (*Saul E. Lipnick* with him) for the defendants.

*Myer Z. Kolodny* (*Nyman H. Kolodny* with him) for the plaintiff.

SPALDING, J.   On March 15, 1961, the city of Woburn (city) entered into a contract with D. Guschov Company, Inc. (Guschov), for the construction of a school.   The plaintiff, a subcontractor, contracted to do the excavating and grading.   New Amsterdam Casualty Company (Amsterdam) furnished the bond required under G. L. c. 149, § 29, securing payments by Guschov for labor and materials. The plaintiff by this bill seeks to establish a lien under § 29 for sums alleged to be due him for labor and materials supplied pursuant to his subcontract with Guschov.[1]   The evidence is reported and the judge made a report of the material facts.

Under his subcontract the plaintiff agreed to do the following work for the sum of $41,000: "Clear and grub site;

---

[1] The plaintiff seeks to establish this lien by reaching the funds retained by the city under its contract with Guschov, and by reaching the proceeds of the bond executed by Amsterdam to secure payment to subcontractors.   See, however, part 5 of this opinion.

stockpile loam; remove and dispose of stone walls and foundations; cut, grade and supply necessary borrow to bring site to proposed sub-grades; excavate and backfill foundations and utilities; furnish necessary fill for building to within 12″ of finished floors; furnish suitable backfill over storm piping; supply equipment to install storm piping." Work by "others" was described: "Engineering, hand labor and pumping." If ledge was encountered the following amounts were to be paid extra: "Ledge in open — $6.00 per cubic yard   Ledge in trench — 9.00 per cubic yard."

The subcontract also provided that Guschov would pay the plaintiff ninety per cent of all labor and materials which had been "placed in proper position," and for which payment had been made to Guschov by the city within about ten days after receipt of payment by Guschov from the city.

The items of work included in the subcontract were encompassed by the following items in the general contract between Guschov and the city: " [item] 4.   Demolition, site clearing & stripping . . . [item] 5.   Site excavation and rough grade . . . [item] 6.   Building excavation and fill . . . [item] 7.   Utility excavation, storm piping and structures."   Guschov was to receive a total of $112,774 from the city for the completion of these items, payable in periodic instalments based on estimates of the value of the amount of work completed, furnished by Guschov, and verified by the architect and the city officials.

The plaintiff began work under the subcontract on April 3, 1961.   At the end of April, Guschov made a requisition on the city for $29,755 for work done on items 4–7 of the general contract.   At the end of May, Guschov requisitioned $24,200 for work on those items.   The requisitions were paid by the city to Guschov respectively on the twentieth of May and the twentieth of June.

Guschov paid the plaintiff $6,000 on June 3, and $5,000 about July 10 for work done under the subcontract on items 4–7.   The plaintiff informed Guschov that he was entitled to more than $11,000 for the work done by him during the months of April and May, and, after several unsuccessful

demands for increased payments, ceased to perform any further work under the subcontract.

The judge found that when the plaintiff left the job, Guschov owed him substantially more than the plaintiff had been paid for the months of April and May; and that the failure of Guschov to pay the amounts owed to the plaintiff constituted a breach of the subcontract on the part of Guschov which justified the plaintiff in discontinuing performance. He further found that the plaintiff had seasonably filed with the city a statement of his claim which met the requirements of G. L. c. 149, § 29, and was entitled to reach the funds retained by the city under the general contract and the security under Amsterdam's bond. He ruled that the plaintiff was entitled to the contract price less the cost of completion and payments already made. He awarded the sum of $26,248. From a decree accordingly, Guschov and Amsterdam appealed.

1. Amsterdam argues that there was no evidence to support the finding that the plaintiff filed a sworn statement of his claim in accordance with the provisions of G. L. c. 149, § 29. It is true, as Amsterdam contends, that no sworn statement of the plaintiff's claim was introduced in evidence. But we are of opinion that Amsterdam may not now raise this question. When Wall, the city's superintendent of public works, was testifying, counsel for the plaintiff interrogated him with respect to the receipt of certain letters written on behalf of the plaintiff which included, presumably, the notice of claim. During this interrogation the judge observed that the city in its answer had admitted receipt of the claim. Counsel for the plaintiff agreed that that was so. The judge then remarked, "They admit it. Yes. That is not in issue." Counsel remained silent. The question of the claim was never thereafter inquired about or discussed. Of course, the city's answer did not bind Amsterdam but, in the circumstances, counsel for the plaintiff and the court had the right to assume that questions as to the validity of the claim were no longer in issue. The city in its answer admitted that a sworn notice of claim

was properly filed. At the time the judge stated that the matter of the claim was not in issue, Amsterdam by its silence impliedly waived any defence based on its invalidity. "Where a party causes the judge to understand that certain facts are admitted or that certain issues are waived or abandoned he cannot object to the judge's conducting the trial on the basis of that understanding." *Dalton* v. *Post Publishing Co.* 328 Mass. 595, 599.

2. Guschov argues that there is no evidence to support the finding that the plaintiff was justified in ceasing performance about July 12. Unless Guschov was in default in his payments the plaintiff was not justified in leaving the job. The judge found that at the time the plaintiff quit there was due him for work done in April and May approximately $22,000[1] less the amount ($11,000) which he had been paid. We are of opinion that the conclusion of the judge that Guschov was in default and that further performance by the plaintiff was excused was not plainly wrong.

The plaintiff testified that he had done $13,390 worth of work in April and $9,225 worth of work in May. There was evidence that Guschov requisitioned $53,955 from the city for work completed in April and May which was principally done by the plaintiff. Some of the work for which requisition was made under items 4–7 was done by others. But the judge developed a fraction to allocate the amounts requisitioned between the plaintiff and others. The fraction was composed of a numerator representing the subcontract price to the plaintiff (approximately $41,000) and a denominator representing the general contract price (approximately $81,000) for items 4–6. The denominator employed by the judge was erroneous, for it is now conceded that the general contract price should have included item 7 and was approximately $112,000. But this error does not materially affect the conclusion, for if the correct fraction had been used the plaintiff's share of the $53,955 requisitioned would be in excess of $19,000. By any evaluation of the evidence the plaintiff was entitled to substantially more

---

[1] Of this amount $13,000 was for work done in April and $9,000 was for the work done in May.

than the $11,000 which he had received. This underpayment was a material breach of the contract and justified the plaintiff's stopping work prior to the completion of the contract. *C. C. Smith Co. Inc. v. Frankini Constr. Co.* 334 Mass. 379, 384.

3. Guschov also argues that there was no evidence to support the award in the amount of $26,248. The award was based on the subcontract price less the amount paid and the cost of completion. See *C. C. Smith Co. Inc. v. Frankini Constr. Co., supra.* The subcontract price was $41,000 plus extra amounts for ledge. There was evidence that the plaintiff had performed extra work on ledge amounting to $1,038. From the aggregate of these amounts, $42,038, the judge deducted the $11,000 paid to the plaintiff and the sum of $4,790, which was the cost of completion, provided no ledge was encountered. The latter sum was arrived at mainly on the basis of testimony given by Ruggles, a geologist called by the plaintiff.

Guschov attacks this testimony on two grounds. First it argues that the plans used by Ruggles in computing the amount of excavation remaining to be done were insufficient to enable him to estimate the work. If there were infirmities in Ruggles's testimony based on the inadequacy of the plans he used this went to its weight; it did not put that evidence out of the case or preclude a finding based on it.

Guschov also argues that Ruggles's testimony, which was based on the absence of ledge, cannot provide the basis for computing the cost of completion. Admittedly, the cost of completion would be higher if ledge were encountered, and Ruggles was unable to say that there was no ledge. But the existence of ledge would also have increased the contract price, for the original subcontract so provides. Thus in the computation of the amount awarded the increased cost of completion would be subtracted from the increased contract price, and one would offset the other.[1]

---

[1] The evidence shows that the subcontract between the plaintiff and Guschov provided a price for the removal of ledge. That is evidence of what Guschov would have to pay anyone else for ledge in a contract to complete the plaintiff's work.

4. Guschov has excepted to certain rulings on evidence. Of these, only two, which are closely related to each other, merit discussion. Guschov objected to the following questions: "Now, how much in dollars and cents did you do during the month of April, 1961, under your contract with Mr. Guschov? . . . And have you a figure in the record of what you did for the month of May, 1961?" The plaintiff's answers were respectively "$13,390 for April" and "$9,225 [for May]." The grounds for Guschov's exceptions are (1) that the questions did not ask the witness to state the fair and reasonable value of his work but permitted him to put his own valuation on it and (2) that the data relied upon by the witness was insufficient. As to the first ground we are of opinion that the judge was justified in concluding that the objection being general, the question called for an estimate of the fair value of the work done under the contract for April and May. The second ground goes to the weight, not the admissibility, of the testimony. There was no error.

5. The final decree requires a modification. It permitted the plaintiff to reach the funds retained by the city and also the security of Amsterdam's bond. But the bond, as the plaintiff concedes, is the only security available to the plaintiff under G. L. c. 149, § 29. *Water Works Supply Corp.* v. *Cahill,* 344 Mass. 442, 446–447. The decree should not run against the city but must run against Amsterdam. The decree should be modified accordingly, and, as so modified, is affirmed with costs of appeal.

*So ordered.*