## Mathew S. Masters vs. Fadlo Raja Khuri.

No. 03-P-754.

Suffolk. June 4, 2004. - November 18, 2004.

Present: Laurence, Dreben, & Green, JJ.

*Evidence,* Cross-examination, Bias, Expert opinion, Medical report. *Medical Malpractice.*

This court concluded that the judge at the trial of a medical malpractice action did not commit prejudicial error in precluding plaintiff's counsel from cross-examining the defendant's two expert witnesses concerning payments the defendant's insurer previously made to them, as well as the number of cases referred to them, where it was unlikely that the jury would have considered the payments significant to show bias or that it would have affected the jury's view of the two physicians' credibility. [469-472]

In a medical malpractice action, it was within the trial judge's wide discretion to allow the defendant's experts to state their opinions that the plaintiff's medical records reflected the time the plaintiff's blood results were received, rather than when the blood was drawn, a pivotal issue in the case that arose because of conflicting evidence. [472-474]

Civil action commenced in the Superior Court Department on August 8, 1996.

The case was tried before *Catherine A. White,* J.

*Michael D. Weisman (Sally A. Vander Weele & Peter E. Montgomery* with him) for the plaintiff.

*Robert L. Bouley* for the defendant.

Dreben, J. The plaintiff, suffering an acute asthma attack, called 911 on June 13, 1995 and was taken by ambulance to the emergency room at MetroWest Medical Center in Natick. He arrived at approximately 10:53 (some evidence indicates 10:56) P.M. The defendant, Dr. Fadlo Raja Khuri, was the physician in charge. The plaintiff was intubated, but immediately went into respiratory arrest and into electromechanical dissociation

(EMD), a form of circulatory arrest.[1] Because of severe brain damage the plaintiff, a former active chiropractor, became at age thirty-seven unable to perform the activities of daily living. He is incontinent and needs full-time care.

He brought this action claiming medical malpractice on the part of Dr. Khuri for delaying the intubation. All parties agree that the plaintiff had to be intubated as soon as safely possible after his arrival at the emergency room, and they also agree that the intubation was properly performed. The critical issue at trial was the time at which he was intubated. If, as certain hospital records indicated, he was intubated at 11:00 P.M., the plaintiff concedes there was no negligence. If, however, he was intubated ten to fifteen minutes thereafter, as supported by other hospital records, the delay was, he claims, a substantial contributing cause of his injuries.[2] The plaintiff's two experts, Dr. Anthony T. White and Dr. Selim Suner, emergency room physicians, each with an exemplary curriculum vitae, were of the opinion that the plaintiff was not intubated at 11:00 P.M. in time to prevent cardiorespiratory arrest. They based their opinions on the times the plaintiff was given high doses of epinephrine, 11:15 P.M. and 11:20 P.M. This indicated that 11:15 P.M. was the time of the EMD, which occurred immediately after intubation.

The defendant's experts, Dr. Joseph Zibrak and Dr. Ron M. Walls, also with exemplary credentials,[3] were of the opinion that intubation took place at 11:00 P.M. because of the "clinical course" of the plaintiff's condition and because he received dif-

---

[1] The condition was more precisely defined by one of the defendant's experts and called PEA, pulseless electrical activity, but the distinction is not material to our opinion.

[2] The emergency room records state that the intubation procedure was performed at 11:00 P.M. However, in view of the immediate need to treat the plaintiff, record keeping was secondary. There was thus a question as to when the time was recorded and whether as recorded it was accurate. A blood gas test was ordered on the plaintiff's arrival, but the time at which blood was drawn was disputed. Since the plaintiff was wearing an oxygen mask at the time blood was drawn, the experts agreed that intubation would have then been impossible. Thus, if the blood was not drawn until 11:06 P.M. as some records showed, intubation must have occurred thereafter.

[3] Dr. Zibrak was a pulmonary and critical care specialist and Dr. Walls was chief of emergency care at a major Boston hospital.

ferent EMD drugs by 11:05 P.M., prior to the epinephrine doses referred to by the plaintiff's experts.

After an eight-day trial, during which the jury were presented with evidence that included the plaintiff's extensive disabilities, a videotape of his condition before and after the June, 1995, hospitalization,[4] and figures of lost earnings and costs of care running into several million dollars, the jury found the defendant not negligent. In his appeal, the plaintiff claims that pursuant to *McDaniel* v. *Pickens*, 45 Mass. App. Ct. 63 (1998), it was error to preclude him from cross-examining the defendant's experts about the compensation they had received from the defendant's insurer during prior years. In his view the plaintiff had "a clear right . . . to attempt to prove bias." *Id.* at 66. He also argued that the judge committed prejudicial error in allowing the defendant's experts to testify that the records of blood gases referred to the time the results were received, not when the blood was drawn.

1. *Cross-examination as to bias.* Prior to trial, during discovery, the plaintiff received a letter from counsel for the defendant's insurer listing experts the insurer, Massachusetts Medical Professional Insurance Association (ProMutual), had retained during the previous ten years. The defendant's two experts, Dr. Zibrak and Dr. Walls, were on the list. Dr. Walls had been consulted in connection with ten claims and had received $76,956 during the ten-year period; Dr. Zibrak had been retained in connection with eight claims and had received a total of $27,587.50. Neither had been an insured of ProMutual. During cross-examination of Dr. Zibrak, counsel for the plaintiff, after asking a question about intrathoracic pressure, asked, "Doctor, who is compensating you for your time here in court today?" The doctor answered, "ProMutual Insurance." Counsel continued, "And ProMutual Insurance is the Massachusetts Medical Professional Insurance Association?" Counsel for the defendant interrupted, and the judge ordered the morning recess.

---

[4]The jury were shown two videotapes, the first showing the plaintiff's condition in 1997 and the second in 2001, two weeks before trial. The second tape also contained several minutes of the plaintiff's activities prior to his 1995 asthma attack.

With the jury not present, the judge stated, "I am sitting here stunned." Counsel for the plaintiff then explained that he had been relying on *McDaniel* v. *Pickens, supra,* and that counsel for the defendant had been fully aware of the letter from Pro-Mutual's counsel. After taking a recess to read the *McDaniel* case, the judge pointed out that in that case the judge had been notified in advance of the problematic evidence. *Id.* at 65.

The judge ruled that she would not let counsel "inquire anything more of this doctor on this subject." She later commented that had she been informed "in a way that I could have known what the issue was, and have thought about it . . . you very well could have persuaded me that you're right. . . . But the way it came in I had no opportunity to do that kind of reflection." Counsel made an offer of proof of the letter and his intended inquiries.

Later in the trial, prior to the testimony of Dr. Walls, plaintiff's counsel requested leave to question the doctor about his having been previously retained by ProMutual for a number of claims. Defendant's counsel countered saying that the claims and the compensation showed an insufficient connection with ProMutual to suggest bias. The judge then ruled that "because of the way it was raised and the late hour in the trial, I am not going to permit inquiry on this." She allowed counsel to question the doctor concerning his "testifying history" but counsel was not to mention insurance. The judge again repeated her comments that had the issue been brought up at the beginning of trial by a motion in limine, she would have considered it and might have ruled in the plaintiff's favor.[5]

We conclude there was no error here. Ordinarily, "a plaintiff . . . may not show that the defendant is insured against liability," on the theory that such exposure may lead to undeserved or exaggerated awards. *Goldstein* v. *Gontarz*, 364 Mass. 800, 808 (1974). The judge considered it incumbent on the plaintiff to show that the general rule did not apply before introducing the evidence. Our courts have endorsed the practice of "informal conferences between counsel and judge, before trial and during trial, for advance discussion of matters of doubt-

---

[5]She then said, "[H]ad it been brought up earlier, I probably would have let you inquire about it."

ful admissibility. Such a conference is certainly in order when the mere offer of evidence in open court on a controversial subject may create a prejudice to the objecting party" which it is difficult to eradicate by curative instructions. *Commonwealth* v. *Hood*, 389 Mass. 581, 595 n.5 (1983) (citations omitted). Although the judge may have placed too much emphasis on her view that plaintiff's counsel should have filed a motion in limine to permit this evidence, it would have been prudent for counsel to have alerted the judge in advance of his question to Dr. Zibrak. *Ibid.* See *Commonwealth* v. *Burke*, 390 Mass. 480, 481 n.1 (1983). The judge's consternation was certainly evoked in part by the high potential for jury sympathy in this case in which there was graphic evidence of a severely disabled plaintiff who faces a lifetime of expense for care and treatment. See *Strain* v. *Heinssen*, 434 N.W. 2d 640, 643 (Iowa 1989), and *Barsema* v. *Susong*, 156 Ariz. 309, 312-314 (1988), two of the cases cited in *McDaniel* v. *Pickens*, 45 Mass. App. Ct. at 67.

This brings us to a discussion of *McDaniel* v. *Pickens, supra.* Contrary to the plaintiff's argument, *McDaniel* did not hold that a litigant has a right in all cases to cross-examine a medical expert witness about his or her relationship with the defendant's insurer in an attempt to prove bias. Justice Kaplan explicitly stated that "the trial judge . . . acted incautiously when, *as a per se proposition*, without apprehending what the situation might turn out to be, he excluded all reference to liability insurance that might be offered in proof of an expert's bias" (emphasis added). *Id.* at 67. Here the judge, having read *McDaniel*, was aware that she had discretion to weigh the probative force of the evidence against its prejudicial effect, and although she indicated that her ruling was based on procedural grounds, we cannot but believe she was also influenced by the potential of a verdict based on sympathy.

In any event, even if there was error in her ruling, the error has not "injuriously affected the substantial rights of the parties." G. L. c. 231, § 119. In *McDaniel* v. *Pickens, supra,* the court posited that a judge *may* admit evidence in circumstances where "a defendant's expert in a particular malpractice action has appeared for numerous defendant physicians all insured by one or a group of liability insurers and expects

further references from the same sources." It is true that here both physicians had previously been retained and had received compensation from the defendant's insurer. Nevertheless, they testified, albeit on direct examination, that they had been consulted by both patients and physicians, and Dr. Walls, the recipient of larger payments from the insurer, indicated that sixty percent of his consultations and appearances in court were on behalf of plaintiff-patients. Moreover, as plaintiff's counsel elicited on cross-examination, the revenue derived by Dr. Walls from litigation consultation was "a very small part of [his] income." In view of this evidence and the curricula vitae of the physicians indicating their responsible positions, there was no prejudicial error in excluding evidence of payments and the number of cases referred to Dr. Walls and to Dr. Zibrak. It is unlikely that the jury would have considered that evidence significant to show bias or that it would have affected the jury's view of the two physicians' credibility.[6]

2. *Expert testimony as to the time of blood tests.* The plaintiff claims that the defendant's experts should not have been permitted to give their opinion that the time recorded for the blood tests reflected the time the results were received rather than when the blood was drawn. He argues that the nurse who made the recording on the cardiopulmonary resuscitation form (exhibit 6) and others testified to the contrary, that the experts were not familiar with the record-keeping practices of the emergency room at MetroWest Medical Center, and that the subject was not one appropriate for expert testimony.

The judge acted within her discretion. The plaintiff's medical records were conflicting. Exhibit 5 indicated that cardiopulmonary resuscitation (CPR) started at 11:00 P.M., and exhibit 6 indicated that intubation occurred at 11:00 P.M. It was undisputed that EMD occurred immediately after intubation, and it was consistent, therefore, for the records to show that the time of

---

[6] If the evidence had been admitted, the defendant's counsel would in all likelihood have presented evidence of the physicians' total income to show the insignificance of their receipts from the insurer. Counsel for the plaintiff explicitly told Dr. Walls he was not inquiring about his total income.

CPR and intubation were approximately the same. On the other hand exhibit 8, which was the arterial blood gas log, a departmental record which was *not* part of the plaintiff's medical records, showed that blood was drawn at 11:05 P.M., an impossibility if intubation and CPR had occurred earlier.[7] The respiratory therapist who supervised the logs testified that the figures on the log were approximations, noting that the data on the log were recorded in exact five minute intervals. The emergency room nurse, Virginia DeSorgher, placed the time of intubation on exhibit 6 as 11:00 P.M., and noted the time for the arterial blood gas result at 11:06 P.M. She also testified that she was not certain that the time recorded for drawing the blood was exact; the efforts in the emergency room were primarily directed to taking care of the plaintiff and not to the charting. Indeed, she stated, some of the recording was after the fact.

As Dr. Selim Suner, one of the plaintiff's experts pointed out, the records showed "conflicting times, and [a] conflicting sequence of events." He and the plaintiff's other expert testified, based primarily on the medications given at 11:15 P.M., that the record was incorrect as to the time of intubation.

In this posture of the case, it was within the judge's wide discretion, see *Commonwealth* v. *McDonough*, 400 Mass. 639, 648 (1987), to allow the defendant's experts to state their opinions that the plaintiff's medical records reflected the time the blood results were received, rather than when the blood was drawn.[8] See Liacos, Massachusetts Evidence § 7.7.3, at 408 (7th ed. 1999) ("Whether an expert has sufficient knowledge of the particular facts of the dispute to be qualified to render an opinion is in the discretion of the trial court, which will seldom be reversed").

Where, as here, the conflicting times were in evidence, "the

---

[7]As previously indicated, see note 2, *supra*, it was agreed that at the time the blood was drawn the plaintiff had an oxygen mask placed over his mouth and nose and hence could not be intubated.

[8]Dr. Walls testified that based on his training and experience and his review of the medical records, his opinion was that the 11:06 figure represented "the time that the results are available to the team. . . . We don't report the time it's drawn because what matters is when it comes back. Because when it's being drawn is in the middle of the resuscitation."

question whether the basis of [a] doctor's opinion is sound goes to the weight of the evidence, not its admissibility." *Sacco* v. *Roupenian*, 409 Mass. 25, 30 (1990), quoting from *Baker* v. *Commercial Union Ins. Co.*, 382 Mass. 347, 351 (1981).

*Judgment affirmed.*