SHARON BOULEY, administratrix,[1] vs. JERALD L. REISMAN
& others.[2]

No. 93-P-397.

Middlesex. April 19, 1994. - February 3, 1995.

Present: BROWN, SMITH, & IRELAND, JJ.

*Practice, Civil*, Instructions to jury, Judicial discretion. *Negligence*, Medi-
cal malpractice. *Medical Malpractice*, Standard of care. *Evidence*, Rel-
evancy and materiality, Judicial admission.

At the trial of a medical malpractice action, in which the judge gave de-
tailed instructions to the jury about their role in determining the credi-
bility of witnesses and the inferences they might draw from the direct
and circumstantial evidence presented, the judge did not abuse his dis-
cretion in denying the plaintiff's requests for jury instructions on certain
possible inferences to be drawn from certain facts inasmuch as several
possible inferences could be drawn from those facts. [120-126]
In a medical malpractice action for late diagnosis of a lung cancer the
judge did not abuse his discretion in refusing to give an instruction re-
quested by the plaintiff to the effect that the jury should draw no ad-
verse interest from the plaintiff's smoking habit, where the fact that the
plaintiff smoked had not been raised as a defense and where the sub-
stance of the requested argument had, in effect, been argued by plain-
tiff's counsel without objection. [126-127]
Error, if any, in a judge's allowing in evidence two exhibits that he later on
his own motion struck from evidence just before closing argument was
cured by the judge's limiting instructions. [127-128]
At the trial of a medical malpractice action, questions posed to a defend-
ant on cross-examination by his own attorney did not operate as admis-
sions to revive a theory of liability that had specifically been waived by
the plaintiff during the course of the trial. [128-129]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 15, 1989.

The case was tried before *Charles J. Hely*, J.

---

[1]Of the estates of Lillian L. Bouley and Harold Bouley.
[2]Steven B. Sitzman, Emergency Care, Inc., and Dr. John Doe.

*Frank E. Glazer* (*Leonard Glazer* with him) for the plaintiffs.

*Gail L. Anderson* for Steven B. Sitzman.

*Joan Eldridge* for Jerald Reisman.

*Leslie Lockard* for Emergency Care, Inc.

SMITH, J. This is an appeal by the plaintiff, administratrix of the estate of Lillian Bouley (Bouley), from jury verdicts in favor of Jerald L. Reisman (Reisman) and Steven B. Sitzman (Sitzman), both medical doctors, and Emergency Care, Inc. (ECI). The plaintiff had alleged that the death of Bouley from advanced lung cancer resulted from the medical negligence of each of the defendants in connection with the care Bouley received at Malden Hospital. On appeal, Bouley[3] has raised several issues concerning the judge's rulings on her proposed requests for instructions and the judge's rulings on certain evidentiary matters. First, we summarize sufficient facts to serve as background for our analysis. Later, when we consider the issues, we will summarize additional facts as the need arises.

On Sunday, February 16, 1986, Bouley was involved in an automobile accident. That afternoon she went to the emergency department at the Malden Hospital because she had been experiencing pain in the area of her left ribs, which were injured in the accident. At that time she was seen by the defendant, Dr. Reisman, a specialist in emergency medicine and an employee of ECI.

After Dr. Reisman conducted a physical examination of Bouley, he ordered X-rays taken of Bouley's left ribs. She went to the X-ray department where four X-rays were taken: three showing the left ribs at different angles and one a posterior, anterior chest X-ray. She then returned with her X-rays to the emergency department. Because it was Sunday and after 5 P.M. when the X-rays were taken, no radiologist was on duty.

---

[3]For convenience, we shall refer to the plaintiff's claims as those of Bouley, and not those of the administratrix of her estate or of the other estate.

Dr. Reisman read and interpreted the X-rays, including the chest X-ray. He wrote "OK" on the reading form and discharged Bouley. He made a discharge diagnosis of "contusion left ribs" and wrote that her condition upon discharge was "good." He then referred her X-rays to the radiology department for review by a radiologist the following day.

The defendant, Dr. Sitzman, a radiologist, was on duty the next day. He read all of Bouley's X-rays that morning. When he read Bouley's chest X-ray, he saw an indeterminate density in the right upper lobe of her lung. It was Dr. Sitzman's opinion that the density he detected in Bouley's lung represented a "significant positive finding" which required further investigation. Bouley was not informed of the presence of the density by either Dr. Reisman or Dr. Sitzman or any other physician at the Malden Hospital. Ten months later at the Lahey Clinic, the density seen by Dr. Sitzman was diagnosed as a malignant lung cancer. Bouley died from lung cancer on February 19, 1987.

1. *Alleged errors in the judge's instructions to the jury.* Bouley has raised three issues concerning the judge's instructions to the jury. All three issues concern the failure of the judge to instruct the jury in accordance with Bouley's requests.

a. *Requested instruction as to inference to be drawn against Dr. Sitzman from lack of written record of telephone call.* Dr. Sitzman testified that when a patient was referred to him by the emergency department it was his personal practice to report significant positive findings (such as he saw in Bouley's chest X-ray) both through a written report and through a telephone report to the emergency department. It was his practice not to ask for anyone in particular when he called, but rather to give the information to whoever answered the telephone. It was Dr. Sitzman's impression that his oral report of a significant positive finding would always be written down by the person receiving the telephone call in the emergency room. Dr. Sitzman had no actual memory of making a telephone call concerning the Bouley matter but testified that he thinks it was made be-

cause he always telephoned in that situation. The doctor who was on duty in the emergency department the day that Dr. Sitzman read Bouley's X-rays and who was also an ECI employee, could not remember any such telephone call.[4] If that doctor had received a telephone call from Dr. Sitzman, there would have been some notation made in Bouley's medical record about the contents of the telephone message. No such notation appeared in Bouley's record.

Bouley submitted the following request for an instruction by the judge to the jury:

> "If you find that it was required of all personnel in the emergency department at the Malden Hospital on February 16, 1986 to make a written record of any telephone calls made by a radiologist reporting abnormal x-rays and that this written record would be made in the emergency department record of the patient or in an addendum to the patient's emergency department record, you may find from the lack or absence of a written record of such a telephone call in the Lillian Bouley's emergency department records or in the addendum to it, that no such telephone call was ever made by the radiologist in this case."

The judge did not include the instruction in his charge to the jury. Bouley renewed her request. The trial judge declined to give the requested instruction, stating "I know it is important. I have chosen not to instruct on the possible inferences and identifying the possible inferences." Bouley claims error.

"[A]ppellate courts have traditionally accorded the trial judge considerable discretion [in] framing jury instructions, both in determining the precise phraseology to be used, *Dobbs* v. *Driscoll*, 404 Mass. 634, 655 (1989), and in determining the appropriate degree of elaboration needed, *Julian*

---

[4] Bouley brought an action against "Dr. John Doe," but those claims were dismissed. Although Bouley's notice of appeal included an appeal from the judgment for Dr. John Doe, no issue has been raised on appeal in regard to the dismissal.

v. *Randazzo,* 380 Mass. 391, 397 (1980)." *Ratner* v. *Noble,* 35 Mass. App. Ct. 137, 140 (1993). "In testing the sufficiency of a change, we will read it as a whole . . . to ascertain whether the judge has clearly, adequately, and correctly explained to the jury the principles that ought to guide and control their action." *Torre* v. *Harris-Seybold Co.,* 9 Mass. App. Ct. 660, 678 (1980) (citations omitted).

As a general rule, "requests seeking an instruction that a finding of certain specified facts (of which there was some evidence) do or do not warrant or require a particular conclusion may, within an exercise of the judge's discretion, be properly refused." *Petras* v. *Storm,* 18 Mass. App. Ct. 330, 334 (1984).

The reason for that general rule has been well stated by Justice Lummus in *Barnes* v. *Berkshire St. Ry.,* 281 Mass. 47, 50-52 (1932). "[T]he combinations of facts that may possibly be found by the jury are so numerous in most cases, that to require a judge to state the legal result of each one of them upon request would fill the charge with rulings for the most part immaterial to the facts actually found by the jury, and make the charge long, unbalanced and confusing . . . . The extent to which a judge shall discuss the evidence or the subsidiary facts is generally within his discretion." *Id.* at 50-51. The general rule, however, according to Justice Lummus, is subject to an exception which, like the rule itself, is based on practical grounds. "Sometimes the issue depends upon the existence of some fact, theoretically subsidiary but practically decisive if found. In such a case, for a judge to ignore the simple concrete test and submit the case upon abstract general instructions blurs the point and may mislead the jury." *Id.* at 52.

The plaintiff contends that the requested instruction falls within the exception because a finding by the jury that Dr. Sitzman did not call the emergency department to report the patient's abnormal X-ray would have been decisive of the negligence claim against him. Dr. Sitzman counters that, not only was such a finding not determinative of the outcome,

but also the evidence did not support the requested instruction.

The evidence that there was no notation in Bouley's record of Dr. Sitzman's telephone call would not necessarily warrant the jury's drawing the inference that Dr. Sitzman did not make the call. The lack of a notation in Bouley's record could have meant (1) Dr. Sitzman did not call; (2) Dr. Sitzman did call but the message he left was not passed on to the emergency department physician; or (3) Dr. Sitzman did call, the message was passed on to a physician, but no notation was made on the record. Therefore, several inferences were possible from the lack of a notation, not just the one that was the subject of the requested instruction.

Further, there was conflicting evidence concerning whether the standard of care expected of a qualified radiologist required a telephone call to the emergency department about the significant positive finding in Bouley's X-ray. While Bouley's expert and Dr. Sitzman himself testified that the standard of care required a telephone call, there was evidence from Dr. Sitzman's expert and from Dr. Sitzman (he contradicted his earlier testimony) that the standard of care required only a written report, not an oral report. Consequently, a finding that no phone call was made was not decisive on the issue of Dr. Sitzman's negligence because the jury would still have had to determine whether the standard of care required that he make such a call.

In these circumstances, the judge had discretion to decide whether or not to include the instruction. See *Barnes* v. *Berkshire St. Ry.*, 281 Mass. at 51. We find no abuse of that discretion, especially where the judge gave detailed instructions to the jury about their role in determining the credibility of witnesses and the inferences that they might draw from the direct and circumstantial evidence presented at the trial.

b. *Requested instruction as to inference to be drawn against Dr. Reisman concerning the written report.* Dr. Sitzman testified that on the day he read Bouley's X-rays, he dictated a report of his findings. The next day his dictation

was transcribed onto a six-part report form and signed by him. The usual procedure after such a report is signed is that the secretary separates the form for distribution through the intrahospital mail system. If the patient has been referred for X-rays from the emergency department, the secretary sends a copy to that department. The charge nurse in the emergency department has the responsibility of reviewing the radiology reports received through the intrahospital mail.[5] If the report indicates normal findings, the report will be placed in the mail box of the emergency department physician who ordered it. If the report shows a significant positive finding as Bouley's report did, then the charge nurse would add an addendum to the patient's medical record. No such addendum appeared in Bouley's medical record.

Here, Dr. Sitzman's report had Dr. Reisman's name in the upper right corner. Dr. Reisman had a mail box with his name on it in the emergency department. Dr. Reisman testified that he was not on emergency duty the date that the report was received in the emergency department but that in the normal course of events he would have received the report of Dr. Sitzman. He testified that he never received the report. Both Dr. Sitzman and Dr. Reisman testified that the intrahospital mail system was highly reliable. Dr. Reisman testified that it would have been below the standard of care of the average qualified specialist in emergency medicine for him not to have notified Bouley of the results of the X-rays if he had received the report.

The plaintiff requested the following instruction.

> "If you find that there is evidence in this case that the radiologist enclosed his report in an envelope marked specifically for delivery to the attending physician in the emergency room and then placed this envelope into a bin for the intended purpose of delivering same to this physician in the emergency room and that the intra-hos-

---

[5]The charge nurse was an employee of the Malden Hospital. Bouley's action against Malden Hospital was dismissed by a voluntary stipulation filed by Bouley.

pital mail system at the Malden Hospital on or about February 16, 1986 was reliable, *then you are entitled to find that the envelope containing the report that was addressed to the attending physician in the emergency room was in fact received by the attending physician, notwithstanding any denial of receipt by the addressee.* If you find that the attending physician in the emergency room did receive the envelope containing the radiologist's report, then you may find that his failure to communicate this report to the patient, Lillian Bouley, was below the standard expected of the average qualified physician practicing the specialty of emergency medicine." (Emphasis supplied.)

The judge declined to give the requested instruction, citing the same reasons he gave for declining to give the previous requested instruction.

In addition to the arguments Bouley advanced in regard to the other instruction request, she also claims that this request was an accurate statement of the law and cites *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman*, 302 Mass. 508, 509 (1939), in support of her argument. In that decision the court ruled that the mailing of a properly addressed letter constituted prima facie evidence of delivery to the addressee. However, the court also stated that "[a]s soon as evidence is introduced that warrants a finding that the letter failed to reach its destination, the artificial compelling force of the prima facie evidence disappears, and the evidence of nondelivery has to be weighed against the likelihood that the mail service was efficient in the particular instance, with no artificial weight on either side of the balance." *Id.* at 510.

Even if we were to assume that the *Hobart-Farrell* decision applies to this matter, we would still hold that the judge was not required to give the instruction in the form it was requested.

Dr. Reisman denied receipt of the written report. There was evidence that once the report was mailed, it was the duty of the charge nurse to place the report into the proper bin and to make an addendum to Bouley's medical record. No

such addendum was made. Therefore whether the report was delivered to Dr. Reisman was a fact for the jury to determine. "[I]t is not required and often it is unwise for a judge to charge on what result follows from a particular set of facts which a jury might, but need not, find." *Callahan* v. *Boston Edison Co.*, 24 Mass. App. Ct. 950, 952 (1987). See also *McGillivray* v. *Eramian*, 309 Mass. 430, 432 (1941) ("no error in the refusal to give . . . instructions which were for findings or inferences of fact which were for the jury"). It was within the judge's discretion not to give the requested instruction.

c. *Requested instruction that physicians take patients as they find them.* In regard to the damages aspect of the matter, Bouley's life expectancy was an important issue. Bouley's sisters and children testified and portrayed her as a healthy, health-conscious woman who exercised frequently and smoked only a half-pack of cigarettes a day. During the cross-examination of the witnesses, the defendants asked questions seeking to establish that, contrary to the witnesses' answers on direct examination, Bouley had smoked a pack of cigarettes a day for thirty-two years and only stopped a few months before she was seen in the emergency department. Further, the defendants elicited testimony from expert witnesses that Bouley's cancer was a typical smoker's cancer and that, like most cancers of this type, it was probably incurable at the time of detection.

On the issue of smoking and its relationship to lung cancer, Bouley requested the following instruction.

> "You are instructed that physicians take a patient as they find them in the physical condition that they are in when they treat them. No adverse view or finding of fault or prejudice in any way toward the decedent should be made because of evidence that she had been a cigarette smoker for many years prior to her having stopped smoking and as a result probably or may have developed her lung cancer."

The judge refused to give the instruction. Bouley claims error, arguing that the jury should have been instructed that Bouley was entitled to the same level of medical care for her lung cancer whether she was a smoker or not and that the jury should not hold the fact that Bouley was a smoker against her. We disagree.

A reading of the record demonstrates that the references to smoking, in the contexts in which they appear, do not suggest that the jury should return verdicts against Bouley because she was a smoker. None of the defendants raised a contributory negligence defense or argued to the jury that Bouley's smoking caused her lung cancer and that, therefore, she should not prevail on her action against the defendant. Further, we note that Bouley's trial counsel, without objection, placed the substance of his requested instruction before the jury in his closing argument. In these circumstances, we hold that the judge did not abuse his discretion in refusing to give the requested instruction.

2. *Admission in evidence of certain exhibits and their subsequent withdrawal.* During the cross-examination of Bouley's medical expert, Dr. Reisman's trial counsel established that Bouley's attending physician after she left the emergency room was a Dr. Doshi. Through questions of the witness, Dr. Reisman's lawyer tried to show that Dr. Doshi had received the X-rays taken at the hospital. Apparently, Dr. Reisman's purpose in asking the questions was to demonstrate that if Dr. Doshi, who was not a radiologist, had seen the X-ray, he should have noticed the density and informed Bouley of it, and if he did not, then he was negligent.

It was not clear from the witness whether Dr. Doshi had received Bouley's X-rays. However, prior to Dr. Sitzman's direct examination and over objection, his counsel put in evidence as exhibits (1) the film jacket for Bouley's X-rays and (2) the original sign-out card. The exhibits showed that on April 16, 1986, Bouley's X-rays had been signed out to Dr. Doshi. The judge ruled that the exhibits were relevant.

Just before closing arguments of counsel, the judge, sua sponte, reversed his decision and struck the exhibits from the

evidence. His reason was that the exhibits were not relevant and might distract the jury from the main issue. In his charge to the jury, he directed the jury's attention to the exhibits and informed the jury that he had struck them from evidence and that "what Dr. Doshi had in the way of films and access of [the] films by Dr. Doshi are not a relevant issue in the case."

The issue raised by Bouley on appeal is a narrow one. She does not claim as an issue that the line of questioning was improper; rather her issue is restricted to the allowance in evidence of the two exhibits in the first place, notwithstanding the judge's subsequent action in removing them from the evidence.

If it was error to allow the two exhibits to be placed in evidence, we presume that the jury followed the judge's instructions and disregarded the exhibits. See *Roberts* v. *Southwick*, 415 Mass. 465, 473 (1993). Therefore, any prejudice that resulted from the admission of the exhibits was cured by the judge's instructions.

3. *Dr. Reisman's alleged liability in failing to see the density in Bouley's chest X-ray.* At trial, Bouley's theory of negligence against Dr. Reisman was that he had received Dr. Sitzman's report and had not communicated it to Bouley. It was not her theory, at least at the start of the trial, that Dr. Reisman was negligent in not seeing the density in the X-ray when he examined it.

On appeal, however, Bouley argues that, by his conduct in implying that Dr. Doshi should have detected the density in the chest X-ray, Dr. Reisman made a judicial admission that he also should have detected it. Therefore, according to Bouley, a jury question was created as to Dr. Reisman's negligence in not seeing the density, and the judge committed error in not instructing the jury on that theory of negligence.[6] Dr. Reisman contends that his questions did not con-

---

[6]Bouley framed the issue as we have stated in the text. In her argument concerning that issue, she states that her motion for a directed verdict against Dr. Reisman on liability and her subsequent motion for a judgment notwithstanding the verdict should have been allowed. However, she

stitute a judicial admission and further that Bouley waived this particular theory of liability.[7]

The record shows that Bouley did specifically waive this theory of liability during the course of the trial.[8] Moreover, we do not think that Dr. Reisman's counsel, by asking certain questions of the witness concerning Dr. Doshi's role, had the effect of reviving the theory. We agree with Bouley that conduct by counsel during the course of the trial may constitute an admission. See Liacos, Massachusetts Evidence § 2.5 (6th ed. 1994). All the cases cited for that proposition, however, concern the failure of an attorney to object when, during trial, an issue or theory of defense was either said not to be an issue or to be the only one in issue. See *Dalton* v. *Post Publishing Co.*, 328 Mass. 595, 599 (1952); *Owens* v. *Dinkins*, 345 Mass. 106 (1962); *Drinkwater* v. *D. Guschov Co.*, 347 Mass. 136, 140 (1964); *Forte* v. *Muzi Motors, Inc.*, 5 Mass. App. Ct. 700, 704-705 (1977). In those decisions, conduct by the attorney that was held to constitute an admission was either a waiver or acquiescence by silence. None of the decisions hold that questions asked during cross-examination constitute an admission. We rule that the questions in this matter did not constitute a judicial admission and, therefore, a jury question was not created as to the possible negligence of Dr. Reisman in regard to his examination of the chest X-ray.

In sum, we have examined all the issues raised by Bouley on appeal. We rule that the judgments should be affirmed.

*So ordered.*

---

does not make the denials of those motions separate issues, and we do not consider them.

[7]At the charge conference, the judge informed the parties that he intended to instruct the jury that Bouley's action against Dr. Reisman did not include a claim that he was negligent because he failed to observe the density in the chest X-ray. The judge stated, correctly, that there was no expert testimony to support that theory of liability.

[8]During voir dire of the plaintiff's expert, counsel for the plaintiff informed the court that he "did not intend to get into" the issue that Dr. Reisman should have observed the density.