DONNA M. HARRIS-LEWIS[1] *vs.* GILBERT H. MUDGE, JR.

Nos. 00-P-1759 & 01-P-1649.

Suffolk. September 11, 2003. - February 20, 2004.

Present: CYPHER, COWIN, & MILLS, JJ.

*Evidence,* Relevancy and materiality, Insurance. *Negligence,* Medical malpractice. *Practice, Civil,* Instructions to jury.

At the trial of a medical malpractice action arising from the death of a professional basketball player, the judge committed no reversible error in the de bene admission of certain cocaine evidence, where the evidence was relevant and its relevancy was not substantially outweighed by its prejudicial effect [485-487]; moreover, the judge did not abuse his discretion in admitting de bene the player's personal services contract and insurance evidence, which were both relevant and probative of the player's credibility in denying drug use to his doctors [487-488].

At the trial of a medical malpractice action arising from the death of a professional basketball player, the judge did not err in instructing the jury to disregard all evidence and comment with respect to cocaine use, the player's personal services contract, and insurance, where the judge demonstrated extreme caution by excising evidence of drug use, insurance policies, and the player's contract, not at the beginning of trial, but rather by closely monitoring the evidence as it developed, and ultimately striking the evidence when he found it to be irrelevant, and by giving careful, explicit instructions to which counsel, in effect, stipulated, and such instructions were unmistakable. [488-490]

CIVIL ACTION commenced in the Superior Court Department on April 30, 1996.

Following a jury trial on a medical malpractice complaint against four defendants and the declaration of a mistrial as to one of the defendants, a second jury trial as to this defendant was had before *Thayer Fremont-Smith,* J.

A motion to vacate an order of the Superior Court judge was considered by *Jacobs,* J.

*Pamela Harris-Daley* (*Krista M. Larsen* with her) for the plaintiff.

[1]Executrix of the estate of Reginald Lewis.

*William J. Dailey, Jr.* (*Myles W. McDonough* with him) for the defendant.

MILLS, J. The plaintiff is Donna M. Harris-Lewis, as executrix of the estate of her husband, Reginald Lewis, who was a professional basketball player for the Boston Celtics. After the death of her husband, Harris-Lewis filed a medical malpractice complaint against defendant Gilbert H. Mudge, Jr., and three other physicians; the matter was tried before a jury in June, 1999 (first trial). The jury then rendered a verdict in favor of two of the defendant physicians, a third having been previously dismissed from the case. The jury was unable to reach a verdict as to Mudge, and a mistrial was declared.

Upon a second trial in April and May, 2000, with Mudge as the only defendant, a jury rendered a verdict for the defendant with a finding of no negligence. Judgment entered for Mudge on that verdict. Harris-Lewis appealed the judgment.[2] In her appeal, Harris-Lewis claims the judge erred in the admission of evidence of the decedent's alleged use of cocaine (the cocaine evidence), and in the admission of evidence of the Celtics contract with Lewis and the evidence of the insurance policies on Lewis's life. She argues that the striking of this evidence at the conclusion of the trial, despite the judge's curative instructions to the jury, was insufficient to remedy the prejudice to her produced by the admission of this evidence.

We hold that the judge committed no reversible error in the de bene admission of the cocaine evidence and that, even if the admission was error, the judge's curative instructions rendered any error harmless. The de bene admission of the insurance policies and Celtics contract in this negligence action is more troublesome. However, in light of our discussion below, we will not substitute our judgment for that of the trial judge. We affirm.

I. *Background.* Lewis collapsed during a professional basketball game on April 29, 1993, and after immediate examination by a team doctor was allowed to continue the

---

[2] In 00-P-1759, Mudge appeals from an order by a single justice of this court dated October 30, 2000. That appeal is consolidated with Harris-Lewis's appeal on the underlying case. The order of the single justice is affirmed. Further discussion is unnecessary in view of our disposition of Harris-Lewis's appeal.

game. On the next day he was admitted to the New England Baptist Hospital (the Baptist) and examined by a team of doctors. He received a variety of diagnostic tests, which an additional group of cardiology specialists at the Baptist reviewed. After consultation among several of these doctors, the consensus was that more testing was necessary. These consultations, including the scheduling of drug testing, were reported to the Lewises. The Lewises rejected the Baptist recommendations, and within hours Lewis was transferred to the Brigham and Women's Hospital (the Brigham) where he was admitted and initially seen by Mudge.

Lewis remained a patient at the Brigham from May 2 to May 10, 1993. Mudge, as Lewis's primary doctor, received input from a third team of doctors consisting of two dozen or more specialists, several of whom performed additional diagnostic procedures. Several of the consulting physicians participated in the discharge plan for Lewis, which included a monitored game, "betablockade" medication, and salt tablets. Mudge communicated the plan and cautionary instructions to the Lewises.

In early June, Mudge assisted the Lewises in obtaining still further consultation from a fourth group of physicians at the UCLA Medical Center. These physicians agreed with the monitored game plan, and Mudge related their response to Lewis. The monitored game never occurred. Lewis died while playing unmonitored basketball with friends on July 27, 1993.

The second trial commenced on April 3, 2000. Prior to trial, the judge ruled on several motions in limine. These included Harris-Lewis's motions to preclude evidence of alleged illicit drug use and evidence of Lewis's Celtics contract and life insurance policies.[3] The pretrial pleadings set out the plaintiff's position that Lewis had never used cocaine; that he did not admit cocaine use to Mudge; that Mudge lied when he reported that Lewis admitted to historical use of cocaine; and that, in any event, any evidence of cocaine use was irrelevant to the medical malpractice issue because, even if cocaine had caused Lewis's

---

[3]The basketball contract between Lewis and the Celtics continued payment of Lewis's salary to his survivor, Harris-Lewis, in the event of his death, presumably with the proceeds from the insurance.

heart condition in the first place, Mudge nonetheless misdiagnosed that condition whatever its cause.

Harris-Lewis reported that five of her experts were expected to testify that "[a]ssuming for *purposes of argument only* that Dr. Mudge's story that [Lewis] admitted cocaine use in the past occurred on or about July 12, 1993, [the witnesses] are expected to testify that, upon receiving that information, Dr. Mudge should have: (1) readmitted [Lewis] immediately for medical care; [and] (2) made a notation in the chart adding this information to the record." (Emphasis in original.) Harris-Lewis also specified that her witnesses would testify that Mudge misdiagnosed Lewis and performed improper tests, and that the erroneous diagnosis and subsequent improper treatment plan resulted in Lewis's death. In sum, Harris-Lewis argued that the genesis of Lewis's condition was not relevant and that evidence of drug use was so highly prejudicial that any probative value was conclusively outweighed.

Counsel for Mudge argued throughout the pretrial pleadings and arguments that Lewis had historically used cocaine; that cocaine use was relevant to the diagnosis of Lewis's cardiac symptoms; that Lewis had denied cocaine use multiple times during the course of his hospitalization and in connection with the formulation of his treatment and discharge plans; that the absence of cocaine use in Lewis's history was an important diagnostic criterion and was reported to approximately thirty cardiac specialists, both local and out-of-State, who took part in various aspects of Lewis's diagnosis; that eventual disclosure by Lewis fifteen days before his death of his cocaine use was late and, if the use were known at the onset of his hospitalization and treatment, it would have been important for the medical management of his case; and that without this information, Mudge was at a diagnostic disadvantage because he did not possess relevant patient history.

Mudge specified that his experts in cardiology would testify, essentially, that the case was complex and intricate, and no clear consensus existed among numerous expert consultants; and that Mudge's decisions were appropriate and in accordance with the appropriate standard of care for qualified cardiologists confronted with the symptoms presented by Lewis. Six of

Mudge's experts were expected to testify that, in light of the patient's prior denials of cocaine use, his late disclosure of historical cocaine use, and the absence of any indication or suspicion of current cocaine use, Mudge had acted appropriately in "instructing the patient that a further appointment would be scheduled . . . to re-evaluate all of the data and [to] conduct further testing as may be necessary." Mudge identified Dr. Aretz, an expert in cardiac pathology at the Massachusetts General Hospital, who was expected to testify that examination of the decedent's autopsy materials revealed findings consistent with the "cardiac effect of cocaine," and that other evaluations and conclusions relating to cocaine ingestion would have been noteworthy in attempting to determine the cause of Lewis's symptoms that resulted in his death.

The defendant similarly argued that the Celtics contract and life insurance policies were relevant and admissible because they pertained to Harris-Lewis's bias, motivation, and financial interests. The Celtics contract was set forth in a series of documents including Lewis's NBA uniform player contract and the NBA/NBPA collective bargaining agreement. Cocaine use by a player was prohibited by the documents and would authorize contract termination and immediate dismissal of the player.

On Lewis's own life insurance application with the Prudential for a two million dollar policy in effect in 1993, he had checked off "no" to an inquiry whether or not he had ever used cocaine. That application stated that a material misrepresentation would invalidate coverage. Lewis similarly answered "no" on application papers for a life insurance policy issued by the Equitable to the Celtics to guarantee payment of contractual obligations to him. Harris-Lewis argued to the trial judge that the admission of this evidence would be an abuse of discretion.

Mudge contended that the trial judge lacked discretion to exclude relevant evidence; that the Celtics contract and the insurance coverage were admissible as probative of a relevant proposition, including the credibility of a witness; and that evidence of Lewis's historical use of cocaine was inextricably intertwined with the Celtics contract and the insurance policies procured by the Boston Celtics on Lewis's life, given that these documents created incentive for both Lewis and Harris-Lewis to

conceal any cocaine use by Lewis. The judge ruled that the contested evidence was admissible de bene.[4]

II. *Admissibility of the evidence.* Relevant evidence is generally admissible at trial. See *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 572 (1997), *S.C.*, 427 Mass. 427 (1998) ("[a]s a general proposition, a judge does not have discretion to exclude relevant evidence"). "Relevance" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Liacos, Brodin & Avery, Massachusetts Evidence § 4.1.1 (7th ed. 1999). The concept of relevance has two components: (1) the evidence must have some tendency to prove a particular fact; and (2) that particular fact must be material to an issue in the case. *Ibid.* The judge has discretion to decide whether evidence is relevant and, if relevant, whether the evidence is to be excluded because its probative qualities are outweighed by its prejudicial effect. See *Green* v. *Richmond*, 369 Mass. 47, 59-60 (1975); *Commonwealth* v. *Hogan*, 12 Mass. App. Ct. 646, 654 (1981); *Kobico, Inc.* v. *Pipe*, 44 Mass. App. Ct. 103, 109 (1997). Further, it is up to the judge's sound discretion whether evidence should be admitted de bene, subject to later motion to strike. See *Ellis* v. *Thayer*, 183 Mass. 309, 310-311 (1903); *R.L. Polk & Co.* v. *Living Aluminum Corp.*, 1 Mass. App. Ct. 170, 172 (1973); note 4, *supra.*

We review the de bene admission of the evidence, over objection due to its possible prejudicial effect, for abuse of discretion. See *Ellis*, 183 Mass. at 310-311; *R.L. Polk & Co.*, 1 Mass. App. Ct. at 172.

The plaintiff claims that Mudge misdiagnosed Lewis. A team of doctors at the Baptist, additional doctors at the Brigham including Mudge, and at least three other witnesses identified as potential experts for the plaintiff were of opinion that historical use of cocaine was relevant to Lewis's diagnosis given his

---

[4]Evidence admitted de bene (or de bene esse) is conditionally allowed for the present, in anticipation of a future need. It is often not immediately relevant because a foundational prerequisite has not been presented. See *Ellis* v. *Thayer*, 183 Mass. 309, 310-311 (1903); Black's Law Dictionary 330 (7th ed. 2000). Such evidence is subject to a later motion to strike. See Liacos, Brodin & Avery, Massachusetts Evidence § 3.11 (7th ed. 1999).

symptoms. Mudge claimed, and Harris-Lewis denied, that Lewis finally acknowledged historical cocaine use more than ten weeks after his treatment began. Given the evidence and arguments before the judge at the time he admitted the cocaine evidence de bene, the evidence was relevant and its relevancy was not substantially outweighed by its prejudicial effect. There was no error in the judge's ruling on the cocaine evidence.

At pretrial proceedings the plaintiff noted to the judge (the same judge who had presided over the first trial) that Mudge was claiming cocaine use by the decedent as part of the defense and that cocaine use would be "relevant as to Dr. Mudge's state of mind in making decisions concerning diagnosis and treatment." The record before the judge when deciding the second trial motions in limine to exclude the cocaine evidence included testimony from the first trial and verified data in various discovery papers which tended to establish that Lewis, when initially evaluated at the Baptist, was repeatedly asked by a Baptist cardiologist if he had used cocaine and that Lewis repeatedly answered no; that Mudge asked the same question three times while Lewis was a patient at the Brigham (same answer); that Harris-Lewis was excited, if not irate, when the inquiry was made; and that all of the twenty-five or more expert doctors consulted in connection with Lewis's case from April 29 to July 12, 1993, had been informed that cocaine use was not part of the patient's history. The record also established that Mudge claimed and Harris-Lewis denied that Lewis had reluctantly but finally admitted historical cocaine use to Mudge on July 12, 1993, after repeated questioning by him. And more specifically, Mudge had testified in the first trial that "in terms of the basis of information that I had about the cause of [Lewis's] potential cardiomyopathy, [Lewis's disclosure] clearly changed my understanding"; that "it certainly began to explain to me the cause of his apical abnormality . . . "; and that "I had more insight into what the potential cause [of] his apical cardiomyopathy was."

Moreover, Mudge had testified specifically at the first trial that the lack of disclosure about Lewis's historical cocaine use had direct effects on Mudge's clinical judgment. Mudge testified that with earlier knowledge of historical cocaine use the

emphasis of his evaluation of Lewis would have shifted and the analysis of the various tests would have changed. Mudge had also testified that the lack of disclosure by Lewis precluded the numerous consultants, from whom Mudge sought opinions, from having full information such that the value of those consultations was questionable.

The plaintiff's motion to exclude the cocaine evidence was denied. The judge carefully explained his rationale, noting that the medical history Mudge had at the time of diagnosis was germane to his diagnosis and that if Mudge knew of historical cocaine use at that time it may have changed Lewis's treatment plan. The ruling was correct based upon the arguments and the record available at the time of the decision. The ruling reflected careful balancing of the potential prejudice of historical cocaine use against the probative value of this evidence to each party. The evidentiary rulings as to relevance can only be based upon the trial judge's understanding at that time of what the evidence is expected to show, and so they were.

More troubling in this matter is the admission of the insurance evidence and the Celtics contract. Harris-Lewis was still receiving Lewis's salary pursuant to the Celtics contract that was funded by one of the insurance policies on Lewis's life.[5] Evidence of insurance is "condemned because it is not itself probative of any relevant proposition. . . ." *Goldstein* v. *Gontarz*, 364 Mass. 800, 808 (1974). "[R]eceipts from [an] outside source do not go to reduce the defendant's liability; yet jurors might be led by the irrelevancy to consider plaintiffs' claims unimportant or trivial or to refuse plaintiffs' verdicts or reduce them, believing that otherwise there would be unjust double recovery." *Id*. at 809.

Here, the Celtics contract and insurance evidence were admitted de bene because such evidence was relevant and probative of Lewis's credibility in denying drug use to his doctors. *Goldstein* v. *Gontarz*, *supra* at 812-813 & n.13 (insurance information may be admissible as probative of credibility). See also *Commonwealth* v. *Danis*, 38 Mass. App. Ct. 968, 968-969 (1995); *McDaniel* v. *Pickens*, 45 Mass. App. Ct. 63, 66-67

---

[5]Harris-Lewis's claim for loss of income was dismissed on a motion for directed verdict.

(1998). Having ruled that the cocaine evidence was admissible de bene, and given Harris-Lewis's assertions that Mudge's report of an admission of historical cocaine use by Lewis was a fabrication, the judge had broad discretion to admit the Celtics contract and the insurance evidence.

Harris-Lewis argues that, despite this relevance, the evidence "may still be excluded on the ground that its prejudicial effect outweighs its probative value." *Goldstein* v. *Gontarz, supra* at 812-813. It is the prejudicial effect that is troubling here. The Celtics contract and insurance evidence were admitted de bene. The values of the Celtics contract and the insurance policies were appended to this evidence and were the subject of testimony before the jury.

The values of the contract and policies were substantial and may have led the jury to conclude that Harris-Lewis was seeking an "unjust double recovery." Perhaps the evidence more properly should have been redacted prior to its admission as evidence of motive to lie, thus removing the highly prejudicial values that were appended, and similarly the testimony about the value of this evidence should have been curtailed. However, as the values of the contracts and policies and concomitant testimony also tended to establish that the Lewises had compelling financial incentives to hide any cocaine use because of the various termination provisions of the contract and the representations made on the insurance applications, we hesitate to second guess the trial judge. The contract and policies and their values were relevant to the issue of motive to lie. The judge did not abuse his discretion in admitting the evidence de bene, and if prejudice resulted, the curative instructions discussed below rendered it harmless.

III. *Curative instructions after striking the evidence.* Shortly before the close of evidence, the plaintiff filed a motion to strike all evidence and comment with respect to cocaine, the Celtics contract, and the insurance. Harris-Lewis argued that the issue of cocaine use was never relevant to Mudge's treatment of Lewis; Mudge never changed Lewis's treatment after his alleged admission on July 12, 1993; Mudge, in the second trial, did not reiterate testimony from the first trial to the effect that he, Mudge, would have considered different treatment modali-

ties and different elements of diagnosis if he had known about the alleged cocaine use during Lewis's hospitalization[6]; and there was no evidence that cocaine use caused Lewis's death. The plaintiff requested that the judge "expressly instruct the jury to disregard all such evidence and commentary which has already been presented regarding cocaine or cocaine use," and to "give the jury an appropriate curative instruction" as to "all evidence and comment regarding insurance policies and any contract of Mr. Lewis to play basketball."

The motion was discussed among the judge and counsel. The parties reported an agreement whereby the plaintiff would withdraw the motion if the defendant would not call Dr. Aretz. The judge responded with his intention to instruct the jury that cocaine and insurance evidence "are out of the case and to disregard them," because it "simply is not relevant, as the testimony has developed." The plaintiff agreed with the proposed instruction.[7] The instruction as given was substantially in accord with the plaintiff's request.

Harris-Lewis now argues that despite the judge's attempt to remove this evidence from the case, irreversible prejudice to the plaintiff had already occurred, and could not be undone. The plaintiff urges the court to adopt the outcome of *Goldstein* v. *Gontarz*, wherein the Supreme Judicial Court reversed a judgment for the plaintiff due to, among other errors, the admission of evidence of insurance. Harris-Lewis asserts that in the present

---

[6]Indeed, certain testimony by Mudge in the first trial, i.e., that his diagnosis or treatment plan would have changed were cocaine use disclosed in a timely manner, did not reoccur in the second trial. Mudge was not asked the question. He did not repeat the testimony. And the record reflects that the absence of this testimony was the principal basis for the plaintiff's motion and the judge's decision to strike the evidence regarding cocaine use, insurance, and the Celtics contract.

[7]Between the time that the judge first recited the proposed language and the plaintiff's agreement to that language, there were extended discussions among the parties' counsel and with the court. The parties attempted to reach a stipulation, apparently did, and then modified their positions. Ultimately, the plaintiff decided not to withdraw the motion to strike and asked the judge to instruct the jury as he had suggested he would. The defendant did not call Dr. Aretz. Among other things, the extent of the attention devoted by counsel to this matter was indicative of the seriousness with which the attorneys accorded the matter and the conscientious, indeed meticulous, attention given to the issues by the attorneys and the judge.

case, as in *Goldstein* v. *Gontarz*, 364 Mass. at 811, the curative instructions given by the trial judge were insufficient to cure the prejudice resulting from the admission of the cocaine evidence, the Celtics contract, and the insurance evidence, which also established that Harris-Lewis continued to receive Lewis's salary after his death. We conclude that the instructions were adequate for the circumstances. Here, counsel addressed the admissibility of the evidence with the judge prior to trial, and after striking the evidence, the judge properly instructed the jury in a "rigorous and emphatic" manner as required by the case law. *Goldstein* v. *Gontarz, supra* at 811.[8]

A trial judge may attend to complaints in the admission of irrelevant or prejudicial evidence during trial by excising such evidence and by giving a careful, forceful instruction to the jury to disregard those matters withdrawn from their consideration. *Bouley* v. *Reisman*, 38 Mass. App. Ct. 118, 127-128 (1995). *Searcy* v. *Paul*, 20 Mass. App. Ct. 134, 145-146 (1985). Erroneously admitted evidence of insurance may be cured by instruction. *Goldstein* v. *Gontarz, supra* at 811. The appellate court presumes that such an instruction is followed by the jury. See *Stricker* v. *Scott*, 283 Mass. 12, 14 (1933), and cases cited; *Bouley* v. *Reisman*, 38 Mass. App. Ct. at 128, citing *Roberts* v. *Southwick*, 415 Mass. 465, 473 (1993). "The admission of incompetent evidence is no ground for a new trial if before the case is given to the jury they are instructed to disregard it, and if there is no reason to apprehend that it finally did prejudice their minds." *Stricker* v. *Scott, supra* at 14.

We agree with Mudge that the judge demonstrated extreme caution by excising evidence of drug use, insurance policies, and the Celtics contract, not as a "per se proposition . . . announced at the threshold of the case," *McDaniel* v. *Pickens*, 45 Mass. App. Ct. at 67, but rather by closely monitoring the evidence as it developed and ultimately striking the evidence when he found it to be irrelevant, and by giving careful, explicit instructions to which counsel, in effect, stipulated, and which "were strong and unmistakable, not halting or ineffective." *Stricker* v. *Scott*, 283 Mass. at 14-15.

---

[8]The plaintiff further cites *Torre* v. *Harris-Sebold Co.*, 9 Mass. App. Ct. 660 (1980), a case principally about improper tactics of an attorney pressing the admission of prejudicial evidence, which is not the case here.

The order of the single justice affirming the order of the Superior Court allowing the reinstatement of Harris-Lewis's appeal is affirmed. The judgment of the Superior Court is affirmed.

*So ordered.*