NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-70

DAVID L. WINN

vs.

MADISON SECURITY GROUP, INC., & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case arises from the award of compensatory and punitive damages following a jury trial on a claim for employment discrimination. The plaintiff, David Winn, is a double amputee who lost his position as a security guard at the defendant company,[2] Madison Security Group, after undergoing a surgery and being unable to use his prosthetic legs for a period of time.[3] On appeal, the defendants argue that (1) their request

---

[1] Angela Culot, who was later dismissed voluntarily, and Michael J. Svizzero.

[2] Codefendant Michael J. Svizzero was Madison Security Group's vice president of operations when the alleged discrimination occurred.

[3] The plaintiff testified as to the extent and origin of his disability. He was burned at the age of twelve, and his legs were amputated as a result of the burns and infection. He adapted well, however, and "did everything in my wheelchair that I could have done . . . if I had my legs." He is, inter alia, able to traverse stairs without the use of prosthetics and drag his wheelchair behind him.

for a mistrial should have been granted after the plaintiff asked a series of unfairly prejudicial questions to a witness during trial, (2) the punitive damage award was both unsupported by the evidence and unconstitutional, and (3) their request for a new trial or judgment notwithstanding the verdict should have been granted.  We affirm.

Discussion.  1.  Request for mistrial.  We first address the defendants' argument that the trial judge erred in not granting their motion for a mistrial after an attorney for the plaintiff pursued an improper line of questioning.[4]  While we agree that the questions were improper, we conclude that the steps taken by the judge toward addressing the infraction were sufficient to cure any potential prejudice to the defendants, and that there was no error in denying the motion for mistrial.

It is well established that "trial judges must take care to avoid exposing the jury unnecessarily to inflammatory material that might inflame the juror' emotions and possibly deprive the defendant of an impartial jury."  Commonwealth v. Berry, 420 Mass. 95, 109 (1995).  See also Mass. G. Evid. § 403 (2022).  However, "[a] trial judge may attend to complaints in the

---

[4] While questioning Svizzero regarding an alleged communication made by another employee of Madison Security Group, the plaintiff asked a series of questions regarding pending rape charges against that employee.  The defendants promptly objected, and the trial judge sustained those objections.

admission of irrelevant or prejudicial evidence during trial by excising such evidence and by giving a careful, forceful instruction to the jury to disregard those matters withdrawn from their consideration."  Harris-Lewis v. Mudge, 60 Mass. App. Ct. 480, 490 (2004).  "We review a judge's decision not to declare a mistrial for abuse of discretion."  Evans v. Lorillard Tobacco Co., 465 Mass. 411, 459 (2013), citing Fialkow v. DeVoe Motors, Inc., 359 Mass. 569, 572 (1971).

On appeal, the parties do not dispute that the questions posed by the plaintiff's attorney were impermissible.  The judge responded to the improper questions by sustaining the objections and by issuing a contemporaneous instruction to the jury that they should disregard the questions, and by reiterating that curative instruction during his final jury instructions.[5]  Both

---

[5] Immediately following the improper questions, the judge instructed the jury:

> "The other thing we were talking about, as you might expect, has to do with when can someone talk about [] the trustworthiness of someone who's not here in the courtroom? And the answer is almost never, with rare exception because we don't allow witnesses to vouch or criticize other people, as a general rule.  So as a general rule we don't ask questions about people who aren't in the witness stand. As a second general rule, there are very limited circumstances where information not related to this dispute can come in concerning someone's character.  When you talk about criminal charges, or pending charges, or allegations, that doesn't have anything to do with this dispute, it has to do with someone's trustworthiness.  On rare occasions if a person is in the witness stand you may be able to get into those types of questions.  That is not the case here

3

instructions were thorough and reminded the jury to ignore the

questions because they were against court rules.  We "presume[]

---

because we're talking about a person that's not here in the courtroom, and we're talking not about a conviction but an allegation or a charge.  And that is just not permitted.

"So I'm going to ask you to strike those questions you heard that made any reference -- strike from your mind, and not play any role whatsoever in your decision deciding the case the question you heard from Mr. Martin about something about alleged rape or attempted rape, which I know nothing about.  If I did I probably wouldn't tell you any more about it anyway, but I know nothing about that, don't know if it's true, et cetera.  But more important, we don't ask witnesses about other witnesses, let alone about alleged criminal charges."

During the final jury instructions, the judge said:

"So I've told you several times to make sure your verdict is based on the evidence.  Let me tell you what the evidence is.  The evidence consists of the testimony of witnesses as you recall it and the things that have been marked as exhibits.  You'll have those exhibits with you in the jury room.  Other things are not evidence and you should not consider them.  Questions from the lawyers are not evidence.  It's the answers that matter.  If a lawyer asked a question and I sustained an objection and it wasn't answered, then neither the question nor the fact that the witness did not answer is not evidence.  If I struck any evidence or told you to disregard it, or any part of an answer by a witness, that part of the testimony is not evidence and shouldn't be considered.  You'll recall in this case that I instructed you to disregard a few questions a couple days ago that the plaintiff's counsel posed because they concerned things that I determined are entirely unrelated to the case and to the issues you have to decide.  Counsel shouldn't have asked those questions. It's essential that you stay focused on the issues that do matter and the evidence that was admitted in the case.  For that reason you should follow my instructions to strike those improper questions and any matters raised by those questions.  They were a violation of the rules and you should put them out of your mind."

that such [instructions are] followed by the jury."  Harris-Lewis, 60 Mass. App. Ct. at 490.  The defendants argue that we should conclude the jury did not follow the trial judge's instruction because its award of punitive damages was excessive, but for reasons discussed infra, we disagree and decline to do so.[6]

2.  Punitive damages.  We next address the defendants' challenges to the sufficiency of the evidence supporting a punitive damage award and the constitutionality of the punitive damages awarded in this case.  The defendants argue both that (1) the evidence was insufficient to support the punitive damage award and (2) the punitive damage award was unconstitutional. We disagree on both fronts.

a.  Sufficiency of the evidence.  "[P]unitive damages may be awarded for conduct that is outrageous, because of the defendant[s'] evil motive or [their] reckless indifference to the rights of others" (citation omitted).  Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 107 (2009).  "Punitive damages are

---

[6] We note the defendants' argument that the trial judge improperly referenced a news article he discovered on the Internet, which was not in evidence, before ruling on their renewed motion for a mistrial.  Because the issue was not raised in the trial court, either at trial or in the defendants' posttrial motions, it is waived on appeal.  See Cottam v. CVS Pharmacy, 436 Mass. 316, 323 (2002).  We further note that the defendants did not object to either curative instruction, so their arguments in that respect are similarly waived.  Id.

5

warranted where the conduct is so offensive that it justifies punishment and not merely compensation." <u>Charles</u> v. <u>Leo</u>, 96 Mass. App. Ct. 326, 345 (2019), quoting <u>Haddad</u>, <u>supra</u> at 110. An award of punitive damages requires a determination of the defendants' intent or state of mind, determinations properly left to the jury, whose verdict should be sustained if it could reasonably have been arrived at from any evidence presented. See <u>Haddad</u>, <u>supra</u> at 107.

Here, the record is replete with evidence allowing the jury to reasonably conclude that the defendants were recklessly indifferent to the rights of the plaintiff. The plaintiff was highly motivated and sought to return to work quickly after his surgery. Although the defendants did engage with the plaintiff regarding an alternate work placement, their effort was lackluster. They repeatedly declined to allow him to demonstrate his ability to perform the requirements of his position and failed to contact the Division of Capital Asset Management and Maintenance (DCAMM) to discover whether it was possible for him to continue to work at his initial jobsite.[7] Despite the plaintiff's earnest efforts and apparent ability to work, the defendants did not allow him to do so due to his

---

[7] Although Svizzero attempted to testify that he only failed to contact DCAMM because he thought another Madison executive had done so, that answer was struck from the record and was not before the jury and therefore we do not consider it.

disability. Although the defendants presented a different interpretation of the evidence at trial and in briefing to this court, the jury were free to arrive at their own conclusion.[8] See DaPrato v. Massachusetts Water Resources Auth., 482 Mass. 375, 392-393 (2019).

b. Amount of punitive damages. To the extent that the defendants argue that the punitive damage award was unconstitutionally high, we review the issue de novo. See Charles, 96 Mass. App. Ct. at 352 n.15 (review of remittitur in punitive damages context is de novo). See also Cooper Indus. v. Leatherman Tool Group, Inc., 532 U.S. 424, 431 (2001) (de novo review in federal context).

Having done so, we discern no constitutional bar to the punitive damages awarded in this case. To support their argument that the award was unconstitutional, the defendants rely heavily on the high ratio of punitive damages as compared to compensatory damages.[9] It is true that "[t]he principle that exemplary damages must bear a 'reasonable relationship' to compensatory damages has a long pedigree." BMW of N. Am., Inc.

---

[8] We note and agree with the trial judge, in his decision and order on the defendants' posttrial motions, that "Madison's wholesale avoidance of Winn's requests and its obligations under discrimination law, could support a high level of reprehensibility."

[9] The plaintiff was awarded $7,688 as compensatory damages for back pay and $300,000 as punitive damages.

7

v. Gore, 517 U.S. 559, 580 (1996).  However, the Supreme Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award" (emphasis omitted).  Id. at 582.  "Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages."  Id.  As discussed supra, the jury were free to conclude that the defendants' discrimination against the plaintiff was egregious.

We further note that the plaintiff, a highly motivated individual, took actions that may have minimized the compensatory damages awarded to him.  After losing his employment with the defendants, he quickly found a new job, meaning that his lost wages were less than they might have been otherwise.  Further, the trial judge observed the plaintiff to have made a "stoic presentation at trial," which may have reduced his compensatory damages for emotional harm.  These facts do not lessen the egregiousness of the defendants' discrimination against the plaintiff, though they may have

8

resulted in an increased ratio of justified punitive damages relative to compensatory damages.[10]

3. <u>Posttrial motions</u>. Finally, we address the defendants' argument that the trial judge erred by denying their posttrial motions. Following the entry of judgment, the defendants moved for, inter alia, judgment notwithstanding the verdict and a new trial. They argued that there was insufficient evidence to support the jury's conclusion that they engaged in unlawful discrimination against the plaintiff. We disagree.

a. <u>Motion for a new trial</u>. "The grant or denial of a new trial . . . will only be disturbed if the judge has abused his discretion." <u>Turnpike Motors, Inc</u>. v. <u>Newbury Group, Inc</u>., 413 Mass. 119, 127 (1992). See <u>Wahlstrom</u> v. <u>JPA IV Mgt. Co</u>., 95 Mass. App. Ct. 445, 448 (2019). "[T]he judge should only set aside the verdict if satisfied that the jury failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law" (quotations and citation omitted). <u>Turnpike Motors, Inc</u>., <u>supra</u>. "[A] judge should exercise this discretion only when the verdict 'is so greatly

_____

[10] The defendants also argue that the award of punitive damages was unconstitutional because the plaintiff did not demonstrate that their conduct amounted to "reckless indifference" regarding the plaintiff's rights. See <u>Labonte</u> v. <u>Hutchins & Wheeler</u>, 424 Mass. 813, 826 (1997) (punitive damages permitted only in case of outrageous conduct, evil motive, or reckless indifference to rights of others). However, there was ample evidence at trial to support such a conclusion.

against the weight of the evidence as to induce in his mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice.'"  Id., quoting Scannell v. Boston Elevated Ry., 208 Mass 513, 514 (1911).

We agree with the trial judge that, in this context, the defendants' "challenge[] turn[s] on re-arguing the evidence." Despite the defendants' assertion otherwise, the jury were equipped with ample evidence to permit them to conclude that the defendants were aware of their obligation to engage in an interactive process with the plaintiff but failed to meaningfully do so.  We discern no abuse of discretion in denying the motion for a new trial.

b.  Judgment notwithstanding the verdict.  In reviewing the denial of a motion for judgment notwithstanding the verdict, we "evaluate whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant].'"  O'Brien v. Pearson, 449 Mass. 377, 383 (2007), quoting Turnpike Motors, Inc., 413 Mass. at 121.

As has been previously discussed, "the evidence presented to the jury [was] sufficient to warrant denial of the defendants' motion[] for . . . judgment notwithstanding the verdict."  O'Brien, 449 Mass. at 383.

10

4.  Attorney's fees.  The plaintiff requests that we award attorney's fees for defending this appeal.  General Law c. 151B, § 9, provides for the mandatory award of attorney's fees, and that provision "would ring hollow if it did not necessarily include a fee for the appeal."  McLarnon v. Jokisch, 431 Mass. 343, 350 (2000), quoting Yorke Mgt. v. Castro, 406 Mass. 17, 20 (1989).  Accordingly, we award the plaintiff reasonable attorney's fees and costs.  "[The plaintiff] may file [his] application for fees and costs, with any appropriate supporting materials, with the clerk of the [Appeals Court] within fourteen days of the date of the rescript."  Fabre v. Walton, 441 Mass. 9, 11 (2004).  The defendants may respond to the petition within fourteen days of said filing.

> Amended judgment affirmed.
>
> Order on posttrial motions affirmed.
>
> By the Court (Wolohojian, Blake & Desmond, JJ.[11]),
>
> *Joseph F. Stanton*
>
> Clerk

Entered:  April 24, 2023.

---

[11] The panelists are listed in order of seniority.

11